UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EDWIN JAMES BITTNER, )<br>)<br>　　　Plaintiff, )<br>　　　　　　v. )<br>)<br>OPTOS, INC., )<br>)<br>　　　Defendant. ) | CIVIL ACTION<br>NO. 04-12465-MLW |

**MEMORANDUM OF DECISION AND ORDER ON
<u>PLAINTIFF'S MOTION TO AMEND THE COMPLAINT</u>**

December 21, 2005

DEIN, U.S.M.J.

## I. <u>INTRODUCTION</u>

The plaintiff Edwin J. Bittner ("Bittner") was employed by the defendant Optos, Inc. ("Optos") as a Field Service Engineer for the Northwest from May 21, 2002 to October 31, 2003. He commenced this action on November 22, 2004 alleging that his employment was terminated in violation of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601, <u>et</u> <u>seq.</u> On September 28, 2005, shortly before discovery was then set to close, Bittner filed a Motion to Amend the Complaint ("Motion") (Docket No. 16) seeking to add a claim that Optos violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, <u>et</u> <u>seq.</u>, by failing to pay him overtime. For the reasons detailed herein, the Motion to Amend the Complaint is DENIED.

## II. STATEMENT OF FACTS

Bittner was employed by Optos as a Field Service Engineer for the Northwest from May 21, 2002 until his employment was terminated on October 31, 2003. Complaint ¶ 4. Bittner contends that his employment was terminated when he requested leave under the FMLA to care for a foster child who was born positive for cocaine and with serious medical issues. Id. ¶¶ 5-9. Bittner commenced this action more than a year later, on November 17, 2004. In his two-count Complaint, Bittner alleged that Optos wrongfully terminated his employment in retaliation for his exercising his rights under the FMLA (Count I). He further contended that Optos wrongfully accepted his payment for company stock, but failed either to provide the stock or refund his money. (Count II - Conversion). This latter count was subsequently dismissed voluntarily.

The parties engaged in discovery. Bittner's deposition was taken on August 10, 2005. Bittner contends that "[a]s a result of the deposition it became apparent to [plaintiff's counsel] that Mr. Bittner has a bona fide claim against defendant for failure to pay overtime pay in violation of the Fair Labor Standards Act" because "Mr. Bittner testified that he regularly worked in excess of forty hours per week and often worked sixty to seventy hours per week while in defendant's employ." Motion ¶ 2. A little over a month later, on September 28, 2005, Bittner filed his Motion seeking to add a claim that Optos violated the FLSA. At the time the Motion was filed, fact discovery was set to be concluded by October 30, 2005. While the discovery deadline was extended to January

31, 2006, that was to complete previously scheduled discovery, and did not include discovery on the issues raised by the proposed FLSA claim.

Optos opposed the Motion on the grounds that it was untimely, its allowance would be prejudicial in that discovery was set to close, and because it was futile. Specifically, Optos argues that Bittner's FLSA claim is precluded because Bittner falls within the Motor Carrier Act exemption, 29 U.S.C. § 213(b)(1), to the overtime payment requirements under the FLSA. In furtherance of its position, Optos submitted excerpts from Bittner's deposition relating to his job responsibilities (attached to Optos' opposition, Docket No. 18). These excerpts, which Bittner does not dispute,[1] show that Bittner had worked as a Field Service Engineer for Optos. He was responsible for customer support, including on-site installations, preventative maintenance, and repairs and upgrades to customer equipment. He traveled from place to place using a company truck in which he kept "a lot of parts" in what is called a trunk kit. This equipment was used to service Optos' medical/ophthalmic equipment. Bittner traveled "almost constantly" throughout his territory, which included the Pacific Northwest and Canada.

---

[1] Bittner was given until November 2, 2005 to respond to Optos's opposition to the Motion to Amend, but he did not do so.

### III.  ANALYSIS

Fed. R. Civ. P. 15(a) provides for the amendment of a complaint with leave of court, where, as here, an answer already has been filed, and mandates that "leave shall be freely given when justice so requires."  As the Supreme Court has explained:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).  Applying these principals to the instant case mandates that the Motion to Amend be denied.

### A.    Undue Prejudice and Delay

In the instant case, Bittner did not file his motion until discovery was virtually completed.  The proposed FLSA claim is premised on an entirely different set of facts than the facts surrounding his termination from employment, which was the basis of Bittner's suit as originally filed.  Thus, if the amendment was allowed, discovery would have to be reopened and the resolution of the case, be it by way of summary judgment or trial, would be substantially delayed.  "[W]here allowing the amendment will cause further delay in the proceedings, 'undue delay' in seeking the amendment may be a sufficient basis for denying leave to amend." Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir. 1998), and cases cited.

Where, as here, "considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for his neglect and delay.'" Id. (quoting Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 933 (1st Cir. 1983) (additional quotations omitted)). The only excuse proffered by Bittner is that he learned of the basis of the FLSA claim during his deposition. However, the underlying facts, i.e., the hours he worked for Optos, were known to Bittner well before litigation was even commenced. Under such circumstances, there is "ample reason to bar the late-emerging [claim]." Quaker State Oil Refining Corp. v. Garrity Oil Co., Inc., 884 F.2d 1510, 1517-18 (1st Cir. 1989) (where discovery is virtually completed and the plaintiff is preparing to move for summary judgment, the proposed counterclaim raises a new theory based on facts known to the defendant all along, and the defendant never provided a satisfactory explanation for its delay, motion to amend to add a counterclaim properly denied), and cases cited.

### B. Futility

A motion to amend should also be denied if a proposed amendment fails to state a claim. See Foman, 371 U.S. at 182, 83 S. Ct. at 230. That is the situation here. Bittner's overtime claim under the FLSA is barred by the exception for employees covered by the Motor Carrier Act ("MCA"). See 29 U.S.C. § 213(b)(1).

On this issue, this court finds the recent case of Harrington v. Despatch Indus., L.P., No. Civ. A. 03-12186-RGS, 2005 WL 1527630 (D. Mass. June 29, 2005) persuasive and controlling. There, Judge Stearns concluded that Harrington, a service

5

technician responsible for servicing industrial ovens manufactured by Despatch, was covered by the MCA and could not maintain an overtime claim under the FLSA. Harrington traveled in a company van to customer sites in various states, carrying with him tools, test equipment and spare parts. The facts of Harrington are on point with the instant case. Because of the similarities of the two cases, this court will only summarize the relevant analysis, which is explored in depth in Judge Stearns' decision.

The MCA, which was enacted in 1935, was designed "to promote efficiency, economy, and safety in the rapidly burgeoning motor transportation industry." Friedrich v. U.S. Computer Servs., 974 F.2d 409, 412 (3rd Cir. 1992). In furtherance of these goals, the Interstate Commerce Commission ("ICC") was given authority "to establish requirements for recordkeeping, safety of operation, qualifications, and maximum hours of work for 'common carriers' and 'contract carriers' by motor vehicle." Id. Of significance here, the ICC was also given "similar regulatory power over employees of 'private carriers' by motor vehicle if the ICC found that such requirements were necessary to promote the safety of operation." Id.

The FLSA was enacted three years later, in 1938, "to protect covered workers from substandard wages and oppressive working hours" and provided, inter alia, for overtime compensation for employees working in excess of forty hours per week. Id. However, to avoid conflicting jurisdiction, the FLSA exempts from its overtime requirements "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the

provisions of [the MCA]." 29 U.S.C. § 213(b)(1). Of relevance to the instant case is that the Secretary of Transportation is authorized to regulate "qualifications and maximum hours of service of employees of . . . a motor private carrier, when needed to promote safety of operation." 49 U.S.C. § 31502(b)(2). Thus, the initial question is whether Optos is a motor private carrier, and then the question is whether Bittner is a qualified employee.

The MCA defines a "motor private carrier" as "a person, other than a motor carrier, transporting property by motor vehicle when -

> (A) the transportation [involves interstate commerce];
>
> (B) the person is the owner, lessee, or bailee of the property being transported; and
>
> (C) the property is being transported for sale, lease, rent, or bailment, or to further a commercial enterprise.

49 U.S.C. § 13102(13). To be covered by the MCA, employees of a motor private carrier must be:

> engage[d] in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a). The regulations provide further:

> Highway transportation by motor vehicle from one State to another, in the course of which the vehicles cross the State line, clearly constitutes interstate commerce under both [the FLSA and the MCA]. <u>Employees of a carrier so engaged, whose duties directly affect the safety and operation of such vehicles, are within the exemption....</u>"

29 C.F.R. § 782.7(b)(1) (emphasis added).

"[Optos] qualifies as a motor private carrier because [Bittner] operates a vehicle in interstate commerce, is the bailee of property (tools and spare parts) owned by [Optos] that are transported in commerce for the purpose of furthering a commercial enterprise (servicing [Optos' equipment])." Harrington, 2005 WL 1527630, at *4. See also id. at *5 (describing cases which have found that tool boxes and related parts and equipment constitute "property" within the meaning of the MCA); and Friedrich, 974 F.2d at 417 (The plaintiffs, field engineers, transported tools, parts, and equipment without which they could not have performed their duties. "Thus the tools, parts, and equipment constituted property within the meaning of the MCA."). Since Optos is a private motor carrier, "if some portion of [Bittner's] job duties impact the safety of interstate motor transportation, the MCA exemption applies and [Bittner] is ineligible for overtime." Harrington, 2005 WL 1527630, at *4.

It is well established that "one who drives a vehicle in interstate commerce directly affects the safety of such operations as long as he is driving." Id. (quoting Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 708, 67 S. Ct. 954, 91 L.Ed. 1184 (1947)). Furthermore, it is well established that "motor vehicle operators can come within the terms of the MCA exemption even though they may perform other duties than driving." Friedrich, 974 F.2d at 418. Bittner, like the field technicians/service engineers in Friedrich and Harrington, had job responsibilities which included driving in interstate commerce and transporting property. Like the employees in those cases, he is covered by

the MCA and is exempt from the FLSA overtime laws.  Id. at 419 (employees driving vehicles "in interstate activities which require them to transport property essential to their job duties come within the reach of the [MCA] and are therefore exempt from the FLSA's overtime compensation requirements"); Harrington, 2005 WL 1527630, at *6 ("Because in the ordinary course of his work, Harrington is called upon to drive in interstate commerce, . . . Harrington is an MCA-exempt employee.").  Thus, the proposed amendment would be futile.

### IV.  CONCLUSION

For all the reasons detailed herein, the plaintiff's Motion to Amend the Complaint (Docket No. 16) is DENIED.

                                            / s / Judith Gail Dein
                                            Judith Gail Dein
                                            United States Magistrate Judge